**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LACY FONSECA,**

    **Plaintiff,**

v.                                    Case No.  8:11-cv-1800-T-30EAJ

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 16) and Plaintiff's Response in opposition (Dkt. 23).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted.

## BACKGROUND

In the instant action, Plaintiff Lacy Fonseca, a former employee of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (hereinafter referred to as the "SSA"), alleges that she was retaliated against under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), for filing complaints of discrimination based on race/national origin, hostile work environment, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

On March 16, 2009, the SSA hired Fonseca as a Teleservice Representative (TSR) trainee (GS-6) under the Federal Career Internship Program (FCIP) in the Tampa, Florida Teleservice Center. The TSC is the home of the SSA's National 800 Number, the primary telephone answering point for general inquiries and reports to the SSA from beneficiaries and the general public.

The duties of a TSR involve receiving telephone calls from the public and correctly answering callers' questions by consulting the SSA's electronic Customer Help and Information Program (CHIP), among other systems. A TSR interviews the caller to determine the nature of the inquiry, elicits relevant facts, explains technical SSA provisions, resolves problems with payments or eligibility, and provides callers with information, advice and instructions about the SSA's programs such as, among other things, retirement, disability, and Medicare insurance.

The FCIP is a two-year trial period during which the intern receives formal training and mentoring. The agency evaluates FCIP employees under the SSA's Performance Assessment and Communications System (PACS) and expects a TSR trainee will learn to provide timely, accurate, polite, and compassionate service to the public, and make satisfactory progress toward achievement of promotion to the career ladder position of a TSR. The SSA may terminate an intern under the FCIP for poor performance or misconduct prior to the expiration of the two-year trial period. FCIP interns may receive Career Ladder Promotions during the FCIP period upon meeting certain eligibility requirements and performance standards.

Fonseca was hired with other FCIP interns and they were provided three months of formal classroom training. Following the three-month formal training course, Fonseca reported to Unit 6 of the Tampa TSC in June 2009 under the direct supervision of Ada Ruiz-Feliciano, Operations Supervisor. Ruiz-Feliciano met with Fonseca in June 2009 and explained that a mentor would be assigned to Fonseca to provide guidance, as needed, on how to efficiently and effectively answer incoming calls while properly navigating the SSA's CHIP system. Ruiz-Feliciano informed Fonseca that the mentoring phase was a transition from the formal classroom training and was not expected to exceed sixty days. Ruiz-Feliciano also explained that, after the mentorship period, she would evaluate Fonseca under the following criteria: (1) ability to successfully navigate CHIP to answer incoming calls; (2) ability to research most questions independently; (3) demonstration of good interviewing skills; (4) ability to handle a variety of calls providing correct, courteous, and complete information in a timely and independent manner; (5) ability to determine proper action based on a caller's problem or question; and (6) demonstration of steady and continuous progress.

On September 30, 2009, Ruiz-Feliciano met with Fonseca for a performance discussion. In Ruiz-Feliciano's written performance discussion, she noted, with respect to the category "Engages in Learning":

> Based on your current performance and your service observations and mentoring process, you are not meeting the standards of this element. You need improvement in communicating effectively. You are not demonstrating a steady progression towards working independently. You need improvement in your interviewing skills to determine the purpose of a call and effectively communicate with the callers. You are having difficulty in responding to the caller's questions and concerns

>> accurately and efficiently. On several occassions [sic] the supervisor/mentor has taken over your calls because of your lack of understanding of the callers needs.

(Dkt. 17-2; Fonseca Ex. 2).

On October 16, 2009, Ruiz-Feliciano met with Fonseca for Fonseca's annual performance appraisal. Ruiz-Feliciano's written performance discussion noted improvement in Fonseca's performance. Ruiz-Feliciano noted, with respect to the category "Engages in Learning" that Fonseca continued to have some difficulty accurately utilizing CHIP. Fonseca received an overall "Successful Contribution" rating. *Id.*

On February 24, 2010, Ruiz-Feliciano denied Fonseca's first Career Ladder Promotion. In denying Fonseca's promotion, Ruiz-Feliciano noted in a memo dated February 24, 2010, that "I have concerns regarding your progress toward independent completion of work and full achievement of expectations commensurate with your time in the position." (Dkt. 17-3; Fonseca Ex. 3). Ruiz-Feliciano also noted: "I have noticed that you are having difficulty with handling complicated issues and identifying the nature of the caller's questions and navigating to the proper area in CHIP to complete your calls timely and accurately." *Id.*

In a memo dated May 5, 2010, Ruiz-Feliciano denied Plaintiff's Career Ladder Promotion a second time. Ruiz-Feliciano noted: "I have concerns regarding your progress toward full achievement of expectations commensurate with your time in the position." (Dkt. 17-3; Fonseca Ex. 4).

In May 2010, Operations Supervisor Cynthia Upson became Fonseca's first-line supervisor after Ruiz-Feliciano accepted a detail in another office. According to Fonseca, from the beginning of their relationship, Upson humiliated her and treated her disrespectfully.

According to Upson, Fonseca was not performing at a satisfactory level of performance when Upson became Fonseca's supervisor. Specifically, according to Upson, Fonseca had a problem with service observations, which are performed by technical experts or supervisors to evaluate the accuracy of an employee's call; a call would be considered incorrect if the employee failed to follow the criteria and ask all the required questions as indicated in CHIP. The individual performing the service observation completes a standard form to document each call observed and the errors assessed. Service observations were summarized in a weekly report for review by management. Fonseca received a score of 61.5 perfect for accuracy in service observations for May 2010, which was below the minimum satisfactory level of 80 percent. In June 2010, Fonseca received a score of 52.9 percent.

On June 30, 2010, Fonseca sent an e-mail to Florine Thorne, the TSC Deputy Manager and Upson's first-line supervisor and copied Upson. In relevant part, Fonseca complained about Upson's "poor level of treatment" of her since Upson had been assigned as her supervisor. (Dkt. 23-6). Fonseca also stated that Upson used a "harsh tone" and "poor demeanor" and that "the work environment [had] become very hostile". *Id.*

According to Fonseca, she became "ostracized" in the office after she sent the June 30, 2010 e-mail. (Fonseca deposition at 105:25-106:4).

Upson consulted the SSA's labor management and employee relations (LMER) staff to determine the next step in addressing what she considered Fonseca's poor performance. According to Upson, because Ruiz-Feliciano had denied Fonseca's promotion twice, it was time to determine the next steps regarding Fonseca's employment. The LMER staff advised Upson that she had the option of providing Fonseca with another thirty days of training or proceeding immediately with termination. Upson chose to provide Fonseca with another thirty days of training because Upson had been Fonseca's supervisor for only a couple of months and wanted to give her an opportunity to improve.

In a July 12, 2010 memo, Upson addressed Fonseca's June 30, 2010 e-mail and informed Fonseca, in relevant part, of a thirty-day special assistance plan. The memo noted, in relevant part:

> The terms of your FCIP appointment require that your performance be satisfactory to management, I am providing you with a special 30-day period of assistance to improve your performance to a satisfactory level. You have not demonstrated or displayed increased proficiency in maximizing full use of your resource material to resolve customer's inquiries accurately and efficiently and you still demonstrate difficulty in identifying the nature of the customer's request for assistance.
>
> You were presented with written notification and had a discussion with your supervisor regarding the delay of your CLP promotion on February 24, 2010, and May 5, 2010. Your performance continues to reflect that you are not meeting the requirements for promotion to the next grade level.

(Dkt. 17-3; Fonseca Ex. 8). The memo also stated that "[f]ailure to show improvement in your duties could result in termination of your employment under the provisions of your FCIP appointment." *Id.*

After receiving Upson's July 12, 2010 memo, Fonseca contacted an Equal Employment Opportunity ("EEO") counselor later that day. Fonseca alleged that the SSA discriminated against her based on race and reprisal due to the May 2010 denial of her Career Ladder Promotion and her placement on the special thirty-day period of assistance. According to Fonseca, Upson placed Fonseca on a thirty-day training plan as retaliation for Fonseca's June 30, 2010 e-mail.

On August 12, 2010, Upson met with Fonseca for a performance assessment and informed Fonseca that her performance was unsatisfactory. According to Upson, based on the results of service observations performed by six members of management, each of whom recorded their observations on standard forms, Upson determined that Fonseca had not improved her performance to a satisfactory level and that Fonseca had not improved her performance under the thirty-day training plan.

On September 16, 2010, Upson proposed to terminate Fonseca. In the September 16, 2010 Proposal to Terminate, Upson stated that Fonseca failed "to demonstrate that [she] can successfully perform the duties of the position for which [she] was hired." (Dkt. 17-3; Fonseca Ex. 10). The Proposal to Terminate also noted, in relevant part:

> After extensive classroom training, fifteen (15) months of mentor review and training assistance, you have not shown sustained improvement in learning the duties of your job. You have not shown that you can perform the duties of the TSR position accurately or independently.
>
> Management has conducted meetings with you concerning your performance discussions on a consistent (monthly) basis since June 2009. Management has consistently informed you, beginning as early

> as September 2009, about your lack of progress and that your overall performance was not satisfactory.

*Id.*

On September 21, 2010, Fonseca sought EEO counseling and thereafter filed an EEO complaint, alleging Upon issued the Proposal to Terminate in retaliation for her prior EEO activity.

On November 18, 2010, Fonseca was terminated for the same reasons indicated in the September 16, 2010 Proposal to Terminate. According to Upson, Fonseca's termination was a progression, which began prior to her supervision of Fonseca.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

### I.   Legal Discussion - Retaliation Claim

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008);

*Butler v. Alabama Dep't of Transp.,* 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."). Plaintiff's burden of establishing a *prima facie* case is not heavy. *See Crapp v. City of Miami Beach,* 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

Importantly, the *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims relying on circumstantial evidence. *Brown v. Alabama Dept. Of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010). Once a plaintiff has made a *prima facie* case of retaliation, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant is able to successfully rebut the presumption of retaliation, then the burden shifts back to the plaintiff to show that the defendant's purported reasons are a mere pretext for retaliation. *Id.* at 1181-82.

The record is bereft of any direct evidence of retaliation; "only the most blatant remarks, whose intent could mean nothing other than to retaliate on the basis of an impermissible factor constitute direct evidence of retaliation." *Masso v. Miami-Dade County*, 465 F. Supp. 2d 1260, 1264 (S.D. Fla. 2006) (quoting *Ward v. Univ. of Cent. Florida Bd. of Trustees*, 2006 WL 1119191, at *4 (M.D. Fla. April 26, 2006)). Therefore, Fonseca must rely solely upon circumstantial evidence to prove her retaliation claim against the SSA.

**II.     Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation As a Matter of Law**

   **A.     The June 30, 2010 E-Mail**

The SSA argues that Fonseca's June 30, 2010 e-mail does not constitute protective activity because the e-mail reflects that Fonseca did not oppose any practice made unlawful by Title VII. The Court agrees. As the SSA notes, Title VII does not prohibit employers from retaliating against an employee based on her opposition to practices that are outside the scope of Title VII. *See Valdes v. Miami-Dade College*, 463 F. App'x 843, 847-48 (11th Cir. 2012) (noting that an employee's grievance filed with human resource department that was essentially a list of workplace complaints unrelated to Title VII did not constitute protective activity); *see also Gerard v. Bd. of Regents of State of Ga.*, 324 F. App'x 818, 826 (11th Cir. 2009); *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 784, 786 (11th Cir. 2012).

Fonseca's June 30, 2010 e-mail does not reference or even allude to any discrimination based on a protected class under Title VII. Although Fonseca states in the e-mail that her "work environment has become very hostile", she does not state that it is hostile because of unlawful discrimination. Accordingly, Fonseca cannot establish a *prima facie* case of retaliation with respect the June 30, 2010 e-mail.

   **B.     The July 12, 2010 EEO Counseling**

The SSA concedes that Fonseca engaged in protective activity when she sought EEO counseling on July 12, 2010, and that the September 16, 2010 Proposal to Terminate and Fonseca's subsequent termination were adverse employment actions. The SSA argues, however, that the record is undisputed that Upson did not have actual knowledge of

Fonseca's July 12, 2010 EEO complaint until October 6, 2010, which was *after* she issued the Proposal to Terminate Fonseca's employment. Importantly, "temporal proximity alone is insufficient to create a genuine issue of material fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Watkins v. Secretary Dept. of Homeland Sec.*, 2010 WL 4263186, at *5 (11th Cir. Oct. 27, 2010); *see also Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).

Upson's EEO Affidavit states that Upson became aware of Plaintiff's EEO activity on October 6, 2010, when Fonseca notified Upson about the prior EEO activity. In her response, Fonseca speculates that Upson was aware of her complaint earlier, but does not point to anything in the record to establish this, other than her own speculation, which is insufficient to establish a genuine issue. Fonseca also points to the EEO Counseling Report to show that Upson "was aware of the first EEO complaint", but the EEO Counseling Report does not state a date as to when Upson became aware of the first EEO complaint.[1] Moreover, the report indicates that Upson was interviewed on October 14, 2010, which is after October 6, 2010, i.e., when Upson first stated she became aware of the first EEO complaint. Thus, Fonseca has not rebutted the record evidence that Upson became aware of the first EEO activity on October 6, 2010.

---

[1] Notably, the EEO Counseling Report also states that, although Upson was aware of the EEO complaint at some prior time, she was not aware that the EEO complaint was *about her*.

Moreover, even assuming for the sake of argument that Upson was aware of the July 12, 2010 EEO activity at some time prior to issuing the September 16, 2010 Proposal to Terminate, the record is undisputed that Upson considered Fonseca's termination and warned Fonseca that failure to show improvement in her duties could result in termination prior to Fonseca's July 12, 2010 EEO activity. Notably, when an employer makes a tentative employment decision before the protected activity, there is no causation where it is carried out after the protected activity. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

Accordingly, Fonseca cannot establish a *prima facie* case of retaliation based on any claim with respect to the July 12, 2010 EEO activity.[2]

### III. Fonseca Cannot Establish that the SSA's Legitimate Reasons for Terminating Her Were Pretextual

Even if the Court assumes, for the sake of argument, that Fonseca can establish a *prima facie* case of retaliation, the record reflects that the SSA had a legitimate and non-retaliatory basis for terminating Fonseca; Fonseca was terminated because of her consistently poor performance. The record reflects that Fonseca's first supervisor, Ruiz-Feliciano, frequently expressed concern with Fonseca's performance. It is undisputed that Ruiz-Feliciano declined to promote Fonseca twice. Fonseca's promotion was denied a third time under Upson's supervision due to poor performance. Also, under Upson's supervision, Fonseca's accuracy in service observations was 61.5 percent for the month of May 2010 and

---

[2] For these same reasons, any retaliation claim with respect to Fonseca's September 21, 2010 EEO complaint and subsequent termination fails because the Proposal to Terminate was issued prior to the second EEO complaint.

52.9 percent for the month of June 2010, both of which were below the minimum satisfactory level. Notably, these scores were received *before* Fonseca engaged in any protected activity as discussed above.

The record reflects that despite receiving thirty days of additional one-on-one assistance and feedback, Upson determined that, based on the documented results of service observations performed by six members of management, Fonseca still had not improved her performance to a satisfactory level.

Other than arguing that she performed satisfactory and Upson was out to get her, Fonseca does not point to any evidence of pretext. Importantly, Fonseca's own evaluations and opinions about Upson's decision are insufficient to establish pretext. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

Finally, Fonseca's focus on Upson's abusive treatment towards other employees in the past is irrelevant to establish pretext; this evidence does not establish that the real reason behind Upson's actions with respect to Fonseca was retaliation for Fonseca's protected activity. Fonseca's focus on Upson's dislike of her is similarly irrelevant because it is not the Court's role to sit as a "super-personnel department". *See Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266-67 (11th Cir. 2010). Indeed, Fonseca's reliance on Upson's disrespectful treatment towards her and others in the past suggests that Upson is an equal opportunity offender, i.e., one could infer that Upson does not discriminate based on an employee's protected class or due to any protected activity, she simply may be a difficult

person to deal with in the work place.  Again, an employer's business decisions-indeed the wisdom of them is irrelevant-as long as those decisions were not made with a discriminatory or retaliatory motive; this is true "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." *Id.*

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 16) is GRANTED.

2. The Clerk of Court is directed to enter final judgment in favor of Defendant and against Plaintiff.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on February 11, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-1800.msj16.frm